# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James E. Moore and Tim McGough, as Trustees of the Carpenters & Joiners Welfare Fund, Twin City Carpenters Pension Master Trust Fund, and Twin City Carpenters Vacation Fund, and each of their successors, | **Civil No. 09-3178 PAM/SER** |
| James E. Moore, as Trustee of the Carpenters and Joiners Apprenticeship and Journeymen Training Trust Fund, and each of his successors, | **REPORT & RECOMMENDATION** |
| Plaintiffs, | |
| v. | |
| R.T.L. Construction, Inc., and Michael N. Larson, | |
| Defendants. | |

**AND**

| | |
|---|---|
| Trustees of the Painters and Allied Trades District Council No. 82 Health Care Fund, et al. | **Civil No. 09-3177 PAM/FLN** |
| Plaintiffs, | |
| v. | |
| RTL Construction, Inc., Michael N. Larson and Jeffrey Rensch, | |
| Defendants. | |

Amanda R. Cefalu, Esq., Anderson, Helgen, Davis & Nissen, LLC, 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402 on behalf of Plaintiffs in 09-CV-3178.

Amy L. Court and Carl S. Wosmek, Esqs., McGrann Shea Carnival Straughn & Lamb, Chtd., 800 Nicollet Mall Suite 2600, Minneapolis, MN 55402 on behalf of Plaintiffs in 09-CV-3177.

John J. Steffenhagen and Karl E. Robinson, Esqs., Hellmuth & Johnson PLLC, 10400 Viking Drive, Suite 500, Eden Prairie, MN 55344, on behalf of Defendants.

Plaintiffs ask that Defendants' Answers be stricken in these cases because of Defendants' alteration and concealment of material evidence and witness tampering. [09CV3177 Doc. No. 97]; [09CV3178 Doc. No. 108]. These cases were consolidated to allow one Magistrate Judge oversee discovery and the audit process. These matters were referred to the undersigned by an Order of Reference dated May 4, 2011, pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(b). For the reasons set forth below, the Court recommends that Plaintiffs' motions be granted in part and denied in part.

## I.   FACTUAL AND PROCEDURAL HISTORY

The Plaintiffs are trustees and fiduciaries of various multi-employer, jointly-trusted fringe benefit plan funds (collectively "the Funds"). With the exception of the Painters and Allied Trades District Council 82 STAR Fund, the Funds are administered pursuant to the Employee Retirement Income Security Act (ERISA). [09CV3177 Doc. No. 1, at 1-3] ("Painters' Compl.") [09CV3178 Doc. No. 1, at ¶ 1-6] ("Moore's Compl."). The Funds provide pension, health and welfare, vacation, and training benefits to employees in the construction trades. Defendant RTL Construction, Inc. ("RTL") is a construction industry employer that provides framing, drywall, taping and carpentry construction services. (Painters' Compl. at ¶ 4); (Moore's Compl. at ¶ 7).

Plaintiffs seek an audit of RTL and collection of unpaid fringe benefits contributions due and owing pursuant to collective bargaining agreements ("CBAs"). (Painters' Compl. at ¶ 7); (Moore's Compl. at ¶ 9). Plaintiffs allege that RTL told employees to underreport their hours, which resulted in required contributions not being paid. (Painters' Compl. at ¶ 17-18); (Moore's Compl. at ¶ 18-20). Plaintiffs also allege RTL maintained false payroll records destroyed relevant payroll and work hour documentation. (Painters' Compl. at ¶ 17); (Moore's Compl. at 20-21).

### A.     Discovery and Imaging of RTL's Server

At the inception of these cases, the Parties agreed that Kroll Ontrack, a computer forensics firm would image RTL's servers and hard drives. [09CV3177 Doc. No. 109, Affidavit of Amanda R. Cefalu, at ¶ 1] ("Cefalu Aff."); [09CV3178 Doc. No. 106, Affidavit of John J. Steffenhagen, at ¶ 2] ("Steffenhagen Aff."). The Moore Plaintiffs asserted that the request for server imaging was "due to concerns about allegations that documentation was being destroyed by the company." (Cefalu Aff. at ¶ 2).

Plaintiffs served three separate Requests for Production of Documents on Defendants. [09CV3177 Doc. No. 109, Affidavit of Amanda R. Cefalu, at Ex. 1] ("Cefalu Ex."); [09CV3178 Doc. No. 101, Affidavit of Carl Wosmek, at Ex. A-B] ("Wosmek Ex."). The document requests sought employee personnel files, records reflecting the recording of employee time, and payroll registers and reports. (*Id.*). Likewise, on May 17, 2010, the Moore Plaintiffs sought additional payroll information, including documents about which Cynthia Goerish, a former RTL bookkeeper, testified. (Cefalu Ex. 3). Goerish testified she maintained payroll "spreadsheets," handwritten documents related to payroll, and documents detailing cash payments made to employees, that RTL failed to produce. (*Id.*). With respect to the Goerish documents, employee

time documents, and payroll documents, RTL claimed the documents had been produced. (Cefalu Ex. 2, 4). RTL asserted the employee files were irrelevant and production would be burdensome; RTL refused to produce the employee files. (Wosmek Ex. 4).

On June 11, 2010, the Parties held a status conference regarding the imaged server. [09CV3177 Doc. No. 106, Affidavit of John J. Steffenhagen, at Ex. C] ("Steffenhagen Ex."). After the conference, RTL's counsel sent a letter to Plaintiffs asserting the documents imaged in February 2010 were accessible in electronic format and Kroll could download the materials Plaintiffs identified. (*Id.*). RTL's counsel went on to state "[a]s such the imaged material has been accessible since last February, although neither of your firms has made any request for any of it." (*Id.*).

### B. Requested Documents

After consolidation, status conferences to coordinate discovery were conducted before then-Magistrate Judge Susan Richard Nelson. At the July 2010, status conference, Plaintiffs sought additional documents, including employee personnel files that RTL claimed were burdensome. Judge Nelson ordered RTL to identify the following for each document request: specific objections, whether the responsive documents were maintained in hard copy or electronic format, the approximate volume of responsive documents, and the time and effort required to produce the documents. [09CV3177 Doc. No. 44] (Text Order dated July 1, 2010).[1] RTL's responses stated that the employee files were irrelevant, some documents were available in electronic format, and that it would take more than 25 hours to compile the documents. (Wosmek Ex. E). Plaintiffs filed Motions for an Order to Show Cause because they believed

---

[1] For ease of reference, to the extent this Court cites to a document on either case docket that is identical in both cases or is contained in both sets of exhibits, the Court will cite to the docket number in the Painters matter 09CV3177 or the Exhibit attached to the Wosmek Affidavit.

RTL's responses did not comply with Judge Nelson's Order. [09CV3177 Doc. No. 50]; [09CV3178 Doc. No. 61]. Judge Nelson ordered RTL to submit an affidavit detailing the types of documents and information kept in employee files. [Doc. No. 59] (Text Order dated July 26, 2010). Judge Nelson also ordered RTL to produce on or before August 16, 2010 any spreadsheets or logs from Goerish reflecting days employees were absent or late (*Id.*). The Affidavit of Shawn Larson's, RTL's Assistant Vice President, stated that the employee files did not contain any payroll information or documents relating to RTL's contributions to the Funds. (Wosmek Ex. G).

The Moore Plaintiffs sent RTL another letter on August 13, 2010, seeking the Goerish-identified payroll documents, including employee-specific documents Goerish called "Personnel History" for each employee, which included information about absences, call-ins, tardies, and disciplinary actions. (Cefalu Ex. 5). RTL asserted that "none of the identified documents exist, except as they may be duplicative of what is already in personnel files (timely addressed in the August 9 affidavit of Shawn Larson)." (Cefalu Ex. 6).

Plaintiffs deposed RTL employees and a corporate designee between December 2010 and February 2011. (Wosmek Aff. at ¶ 10). During these depositions, witnesses were asked if they had ever heard the term "nine for eight." (Wosmek Ex. H at 91-102; Ex. I at 171-181; Ex. J at 132-144). Denying familiarity with the term, witnesses denied that the term meant employees were required to work nine hours but only paid for eight. (*Id.*).

RTL's Controller, Jeffrey Rensch, testified that employee files also contained "Personnel Updates," which were also maintained electronically in the company's human resources files. (Wosmek Ex. J at 184-85). After Rensch's deposition, and despite previous denials that such documents existed, RTL produced "Personnel Updates" on March 3, 2011. (Wosmek Aff. at ¶

14). Plaintiffs assert that the updates "were replete with relevant evidence" including notations of employees working "8 for 5," employees receiving written warnings for not filling out timecards correctly, and notations for employees being paid insufficiently. [09CV3178 Doc. No. 110, at 12] ("[Painters] Pls.' Mem.") (citing Wosmek Ex. L-N)). Plaintiffs identified a number of updates with notations referencing employees working "8 for 5," or the like. (Cefalu Ex. 8 at RTL 273228, 273134, 271943).[2]

### C.   Stoffels' Personnel Update

RTL produced Lea Stoffels' Personnel Update in March 2011, (hereinafter "the March 2011 produced version"). Stoffels' Update contained an entry dated October 16, 2003 stating: "BACK – Working at RTL" with two blank lines beneath. (Wosmek Ex. K) (emphasis in original). This version of the document is different from the Kroll-imaged document from February 2010, (hereinafter "the Kroll version.") The Kroll version, is not blank underneath the October 16, 2003 entry. Rather, that version states "***Journeyman Taper – Dave M and Lea discussed that Lea would work 8 hours and get paid for 7 hours, Lea agreed to this." (Wosmek Ex. Q). Yet another version of the same document was produced in response to the current motions and is attached to the Affidavit of Shawn Larson. [09CV3177 Doc. No. 104, Affidavit of Shawn Larson, at Ex. A-2] ("Larson Aff."). Larson stated that the third version was provided to the EEOC in response to Stoffels' discrimination charge ("the EEOC version"). (Larson Aff. at ¶ 4-5). All three versions have an entry stating "'Fired'" (after Lea was fired – she requested being paid for mileage)." The EEOC version of the document, however, also contains the following language that does not appear in the Kroll version or the March 2011 produced

---

[2] Personnel Updates were produced in March 2011 for some witnesses who had already been deposed. (Cefalu Ex. 10). These documents should have been available prior to the depositions.

version: "[w]ould not rehire, work performance not very good and numerous no shows and late arrivals to work." The EEOC version also does not make any reference to Stoffels agreeing to be paid for seven hours but to work eight hours. Larson attempted to explain the differences in the versions:

> RTL Construction edited the older [Kroll version] in September or October 2010. RTL Construction edited the Lea Stoffels Personnel Update document for two reasons. First, RTL Construction edited the document so that it could be used as an accurate timeline showing Lea Stoffels' employment at RTL Construction to be provided to the EEOC in response to Lea Stoffels' discrimination charge that she filed with the EEOC regarding RTL Construction's failure to hire Ms. Stoffels for an employment position in 2009. Second, RTL Construction edited the Lea Stoffels Personnel Update document so that it would accurately reflect the fact that RTL Construction did not agree to pay Ms. Stoffels for only seven hours of work when she worked eight hours.

(Larson Aff. at ¶ 4-6).

RTL contends its payroll records show Stoffels was paid for eight hours. The Employee Time History Report shows that Stoffels was only paid for seven hours on October 16, 2003, and for the rest of the days she worked that week. (Larson Ex. B). The next week, Stoffels was paid for eight hours each day. (*Id.*). On Tuesday October 28, 2003, Stoffels was paid for working fifteen hours, which RTL claims "was for the eight hours she worked that day, plus seven additional hours representing the seven hours of work she had performed on October 16 and 17, 2003, and October 20-24, 2003, which was now being credited to her." [09CV3178 Doc. No. 114, at 11] (Def.'s Mem.); (Larson Aff. at ¶ 9); (Larson Ex. B).

### D.     Personnel Updates and Employee Files

After receipt of the "Personnel Updates," Plaintiffs requested all RTL employees' personnel files. (Wosmek Aff. at ¶ 19); (Wosmek Ex. O). RTL refused to produce complete employee personnel files. At the March 28, 2011, status conference, [Doc. No. 93], this Court

7

ordered RTL to produce the all employee files and to identify the folders or drives where any electronic personnel information was located. [Doc. No. 94] (Text Order dated March 28, 2011); [Doc. No. 96] (Text Order dated March 30, 2011). This Court also determined the representations in Larson's Affidavit about the contents of employee files were false.

RTL complied and produced employee files and identified where on RTL's server the files were located. Approximately 1,000 employee files were produced. (Wosmek Aff. at ¶ 22). Despite Rensch's testimony about Personnel Updates, only five such updates were included in the employee files RTL produced and those files only contained approximately 58 written and memorialized verbal warnings - far fewer warnings than one would expect with this many employees. (*Id.*). The Plaintiffs also sought copies of the employee file documents from Kroll from the image of RTL's server. (Wosmek Aff. at ¶ 23). Kroll provided the documents to Plaintiffs. (*Id.*).

### E. Mark Holscher

Mark Holscher, a taper employee, gave a sworn statement before this case began, reporting that RTL asked him to work more hours than he recorded. (Wosmek Aff. at ¶ 25); (Wosmek Ex. R). Plaintiffs produced Holscher's statement to RTL during discovery in March, 2010. (*Id.*). Holscher's Personnel Update shows that he was laid off from work on December 16, 2009 due to lack of work. (Wosmek Ex. S at RTL 272735). Holscher began to receive unemployment benefits, but RTL later challenged Holscher's eligibility for unemployment benefits after his affidavit was provided. (Wosmek Ex. S at RTL 299208-299212).

RTL argued Holscher was ineligible for unemployment benefits because RTL called Holscher on December 21, 2009, January 8, 2010, February 5, 2010, March 1, 2010, and April 2, 2010, about available work, but RTL asserts that Holscher never returned the calls. (*Id.*).

Because of RTL's assertions, Holscher was determined ineligible. (Wosmek Ex. S). Holscher appealed and argued that he feared retaliation and that he would not be paid for all his work hours. (*Id.*). Eventually, an Unemployment Law Judge concluded that Holscher had good cause for avoiding potential employment offers from RTL and his benefits were reinstated. (*Id.*). The Personnel Updates for other taper employees show that during the time period RTL was calling Holscher, other employees were being let go for lack of work. (Wosmek Ex. T). The representations RTL made about available work to the Minnesota unemployment benefits officials were misleading at best – if not false.

Plaintiffs also contend that RTL destroyed electronic documents between December 2009 and February 2010. The documents that Kroll confirmed were destroyed appear to be estimates and projections of work hours, based on the titles of the documents. (Wosmek Ex. U-W). Plaintiffs assert that the number of hours employees were originally estimated to work is relevant to determining how many hours the employees actually worked.

## II. DISCUSSION

Plaintiffs request that RTL be sanctioned pursuant to Fed. R. Civ. P. 37 and the Court's inherent powers, arguing RTL: (1) failed to timely produce and concealed key evidence (the Personnel Updates and employee files); (2) intentionally altered evidence (the Stoffels document); and (3) engaged in witness tampering (Holscher). RTL's discovery abuses merit sanctions albeit not the extreme requested sanctions of striking RTL's Answers.

Two sources give a district court authority to impose sanctions: Fed. R. Civ. P. 37 and a court's own inherent authority to control its own judicial proceedings. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004). Both sources of authority apply here.

Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vii) and 37(b)(2)(C) provide that if a party fails to obey an order to provide discovery, a court may issue sanctions including: directing that "facts be taken as established for purposes of the action"; "prohibiting the party from supporting or opposing designated claims or defenses, or from introducing certain matters in evidence"; "striking pleadings in whole or in part"; "staying proceedings until the order is obeyed"; "dismissing the action"; "rendering a default judgment against the disobedient party"; "treating the failure to obey the order as contempt of court", or the payment of expenses or attorneys' fees. *Id.*; *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1011 (8th Cir. 1993); *Gleghorn v. Melton*, No. 05-3411, 195 Fed. Appx. 535, 537 (8th Cir. Aug. 9, 2006) (unpublished). Fed. R. Civ. P. 37(c) provides that if a party fails to provide or supplement information required by Fed. R. Civ. P. 26(a), the party is not allowed to use that information at a hearing or at trial unless the failure was substantially justified. *Id.* Under Rule 37(c), after a sanction motion a court may also order payment of expenses or attorneys' fees, inform the jury of the party's failure, or impose sanctions allowed under Rule 37(b) other than the sanction of contempt. *Id.*

Pursuant to Rule 37(a)(4), an evasive or incomplete discovery response may be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). A court is not required to hold an evidentiary hearing before imposing sanctions where the "record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the sanction." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999) (citing *Comiskey*, 989 F.2d at 1011). Discretion under Rule 37 is limited such that the sanction be "just" and relate to the claim at issue in the order to provide discovery. *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d

717, 719 (8th Cir. 2002) (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

"When a litigant's conduct abuses the judicial process . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court." *Chrysler*, 186 F.3d at 1022 (quoting *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992)). As set forth above, Rule 37 explicitly "grants a district court the authority to enter a default judgment against a party who abuses the discovery process." *Comiskey*, 989 F.2d at 1009. "Thus, striking a party's pleadings under Rule 37 is within the range of appropriate sanctions when a party demonstrates a 'blatant disregard of the Court's orders and the discovery rules,' engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." *Chrysler*, 186 F.3d at 1020. To justify dismissal under Rule 37, there must be: (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party. *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009). A district court is not required "to impose the least onerous sanction available," but may choose "the most appropriate sanction under the circumstances." *Chrysler*, 186 F.3d at 1022. The Eighth Circuit recognizes that "there is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court," but a court can order a default judgment in appropriate circumstances. *Id.* at 1020.

A court's inherent authority also allows it to "fashion an appropriate sanction for conduct which abuses the judicial process. . . ." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). Such sanctions, including an award of attorneys' fees, may be imposed against a litigant acting in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* Sanctions for spoliation of evidence may also be imposed on a party pursuant to a court's inherent powers. *Cenveo Corp. v.*

11

*Southern Graphic Sys., Inc.*, No. 08-5521, 2010 WL 3893680 at *9 (D. Minn. June 18, 2010) (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993)). Spoliation is the "intentional destruction, mutilation, alteration, or concealment of evidence." Black's Law Dictionary 1409 (9th ed. 2009). To set forth a claim of spoliation, the moving party must show that the adverse party destroyed, altered, or concealed evidence, that the evidence was discoverable, and that the loss of evidence prejudiced the moving party. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).

### A. Failure to Produce Personnel Updates and Alteration of Stoffels Document

Plaintiffs ask that RTL's Answer be stricken because RTL concealed and withheld the Personnel Updates and employee files, and altered the Stoffels document. RTL contends that it produced all relevant documents when Kroll imaged RTL's server. RTL claims that the differences between the March 2011 version of the Stoffels document and the Kroll version of the same document had nothing to do with the lawsuit and the time period of the Stoffels note is outside the scope of the lawsuit.[3] This Court has no reason – given the truncated document production - to believe any *ex post facto* explanation or excuse that RTL offers. Sanctions are appropriate for the concealment and alteration of evidence.

RTL argues that imaging of RTL's server containing the Personnel Updates was a production of their documents for purposes of Fed. R. of Civ. P. 34. [09CV3177 Doc. No. 105, at 3, 9] ("Def.'s Mem."); (Steffenhagen Aff. at ¶ 2). The emails exchanged contemporaneous with Kroll's imaging prove this assertion untrue. RTL's counsel's email states:

> my understanding of the agreement between the parties regarding the hard drive imaging is as follows. The computers used for

---

[3] This Court concluded that the November 2003 audit period was six years before Plaintiffs initiated the lawsuit. [Doc. No. 93] (Text Order dated March 28, 2011).

> payroll purposes will be imaged. Kroll will provide an understandable index of documents available on the hard drive to the parties' counsel . . . You agreed to indicate what information from the index is necessary for completion of the audit . . . **No information will be provided by Kroll from the imaged hard drives until agreement from the parties or order of the court.**

(Steffenhagen Aff. Ex. A) (emphasis supplied). Likewise, in describing the imaging process to Judge Nelson on September 15, 2010, RTL's counsel represented that:

> the parties very specifically and repeatedly agreed regarding the process to be used for the review of imaged documents from the hard drive. The process was straightforward: 1) Plaintiffs' vendor would create an index of the documents; 2) Plaintiffs' counsel would review the index and request specific documents; and 3) Defendants would review the request and the documents to determine applicable privileges **or issues regarding discoverability**. Plaintiffs' vendor produced the **index** to [the Moore Plaintiffs' counsel] on March 5, 2010.

(Steffenhagen Aff. Ex. E) (emphasis supplied).

Thus, Kroll's imaging of RTL's server was not a substitution for production of documents under Fed. R. Civ. P. 34. The emails exchanged, as well as the record, establish that the parties contemplated Kroll making an index of documents, from which Plaintiffs could **request** specific documents. Then, and only then, RTL would review the requests and determine if the documents were privileged or were otherwise discoverable. Indeed, if this were not the case, RTL would not have been able to object to the production of RTL server documents.

Throughout this litigation, RTL withheld and concealed Personnel Updates and employee files responsive to Plaintiffs' document requests. Personnel Updates fell within the documents described by Goerish and which Judge Nelson ordered produced on July 26, 2010. In August 2010, Plaintiffs specifically named the documents and sought production of "Personnel

Histories."[4] Despite these directives, RTL contended throughout 2010 and early 2011 that the documents did not exist or were not maintained. RTL did not produce the documents for another six months, and only produced them after Rensch confirmed the documents' existence in his deposition. RTL disobeyed Judge Nelson's July 26, 2010 Order regarding the Personnel Updates. Rule 37 sanctions are appropriate.

Sanctions are also appropriate for RTL withholding employee files, which should have been disclosed at the onset of the lawsuit pursuant to Rule 26(a). While Judge Nelson did not order production of the files in her July 26, 2010 and subsequent orders, that is only because Shawn Larson averred that employee files would not contain relevant payroll information. Documents which have now been produced show that Larson's sworn statements were false. Whether Larson intentionally misrepresented the contents of the employee files, or whether failed to ascertain the contents of the employee files - an implicit requirement to complying with Judge Nelson's July 26, 2010 Order - this Court cannot say. Either way, the Affidavit is a misrepresentation - leading to a significant delay in the production of relevant documents. Although there is no direct order that RTL violated with respect to the employee files, the import of Judge Nelson's discovery orders in June and July 2010 was that employee files should be produced if they contained payroll information.

These documents are both discoverable and key to this litigation. Throughout this litigation, Plaintiffs have argued that RTL made agreements to pay employees for fewer hours than they worked to circumvent contributing benefits to the funds. Personnel Updates are relevant because they support Plaintiff's assertions about such agreements. The withholding of the documents prejudiced Plaintiffs. The documents referencing employees working "8 for 5"

---

[4] While the documents are actually called "Personnel Updates," the semantic difference does not make the documents any less discoverable.

and "6 for 8" could have been used by Plaintiffs to question and impeach RTL's witnesses. Not facing incriminating documents, RTL's witnesses testified that the alleged agreements only referred to productivity such as employees doing eight hours' worth of work in five hours' time. The Personnel Updates contradict this characterization and prove that the term was used in the context of payroll. *See, e.g.*, (Cefalu Ex. 8 at RTL 273228, 273134, 271943).

The Court also concludes that the Stoffels document[5] was altered intentionally and in bad faith. RTL suggested that the deletion of the language was to be more "accurate" because Stoffels was in fact paid for all her hours and to provide a timeline for the EEOC. Even if the Kroll version of the Stoffels document was "inaccurate" because Stoffels was paid for all her hours, this does not allow for alteration of a relevant document. Rather, the proper remedy would have been to submit testimony or an affidavit explaining away the damaging statement. The fact that the deleted language supports Plaintiffs' allegations is troubling, especially given the withholding of documents containing similar language.

RTL argues that changes made to the Stoffels document were done in connection with production of the document to the EEOC. But after RTL filed its responsive papers for this motion, it was determined that there are three versions of the document, the Kroll version with the "8 for 7" language, the March 2011 produced version without that language, and the EEOC version adding language relating to Stoffels' termination. RTL only explains the alteration of the EEOC version, not the March 2011 produced version. Apparently, RTL is willing to change documents to suit their purposes. Just as RTL deleted harmful language from the March 2011 produced version in this case, so RTL added language to the EEOC version, more than five years

---

[5] The fact that the time entry alteration occurred before the relevant audit period in October 2003, does not negate the relevance of the document. The time entry is for only one month before the audit period and its substance is confirmed by other Personnel Updates.

15

after the contemporaneous entry on the document that supported RTL's defense to Stoffels' charge of discrimination. RTL's spoliation of the Stoffels document requires sanctions for the discovery abuse.

The misrepresentations in Larson's Affidavit, the withholding of documents that support Plaintiffs' key allegations, and the intentional alteration of the Stoffels document require this Court to sanction RTL.[6] These discovery issues make it problematic for Plaintiffs and the Court to trust and rely on the accuracy and completeness of the documents produced in this case. While the Court concludes that a sanction of striking Defendants' Answers and entering default judgment would be extreme, other less stringent sanctions are appropriate. Based on the facts and circumstances of this case, the Court recommends that an appropriate sanction would be to direct a factual finding that RTL requested that employees agree to work more hours each day than they would be paid for in order to circumvent paying the Funds the benefits mandated by the CBAs. The Court further finds that a monetary sanction for Plaintiffs' expenses and fees in repeatedly seeking the discovery is appropriate to deter further discovery abuses.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[6] With respect to the allegations of witness tampering for Holscher, the Court is troubled by the timing of RTL's challenge to Holscher's unemployment and since documents suggesting RTL's renewed offers of employment appear to be untrue, since other employees were being laid off for lack of work. The Court concludes, however, there is insufficient evidence in the record to establish that RTL took such actions for the purposes of intimidating Holscher. Further, the monetary sanctions and adverse fact finding sanctions for the withholding and alteration of documents should deter any further inappropriate conduct. The Court cautions, however, that any additional evidence of RTL interfering with or retaliating against a witness will likely result in additional and harsher sanctions.

1. The Painters' Plaintiffs' Motion for Discovery Sanctions [09CV3177 Doc. No. 97] be **GRANTED in part** and **DENIED in part**;

2. The Moore Plaintiffs' Motion for Discovery Sanctions Pursuant to Rule 37 [09CV3178 Doc. No. 108] be **GRANTED in part** and **DENIED in part**;

3. To the extent the motions seeks to strike Defendants' Answers, the motions should be **DENIED**;

4. Within 30 days of the date of Judge Magnuson's Order on this Report and Recommendation, Defendants shall pay both Plaintiffs' groups $10,000, ($20,000 collectively), as reasonable compensation for attorneys' fees and costs incurred in seeking the withheld discovery and in moving for sanctions; and

5. The Court further recommends directing a factual finding that RTL requested that employees agree to work more hours each day than they would be paid for in order to circumvent paying the Funds CBA-mandated benefits.

Dated: August 23, 2011

s/ Steven E. Rau_____
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 6, 2011** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.